UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
DANIELLE PERTUSIELLO,

                         Plaintiff,                          **REPORT AND**
                                                  **RECOMMENDATION**

           -against-                              CV 16-2931 (SJF)(AYS)

COUNTY OF SUFFOLK, POLICE OFFICER
EDWIN WARD, in his individual and official
capacities, JOHN DOE POLICE OFFICER #1,
in his individual and official capacities, JOHN
DOE POLICE OFFICER #2, in his individual
and official capacities, JANE DOE POLICE
OFFICER #1, in her individual and official
capacities,


                         Defendants.
-------------------------------------------------------------------X
**SHIELDS, Magistrate Judge:**

       This is an action commenced by plaintiff Danielle Pertusiello ("Pertusiello" or

"Plaintiff") pursuant to 42 U.S.C. Section 1983 ("Section 1983") and 42 U.S.C. Section 1985

("Section") for alleged violation of her rights under the Fourth, Fifth, and Fourteenth

Amendments to the United States Constitution. Plaintiff's claims arise out of her arrest, which

followed a conflict between Plaintiff and the mother of her former friend. Specifically, Plaintiff's

complaint alleges claims for false arrest, malicious prosecution, excessive force,

failure to intervene, and abuse of process, as well claims of conspiracy pursuant to 42 U.S.C. §

1985(3), to interfere with her civil rights. Individual liability is sought against the arresting

officers. Liability is alleged against the County of Suffolk (the "County") under Monell v.

Department of Social Services of the City of New York, 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed.

2d 611 (1978).   Presently before this court is the motion of Defendants Police Officer Edwin

Ward ("Ward"), Police Officer John Doe #1, Police Officer John Doe #2, and Police Officer Jane

Doe #1 (together, the "Individual Defendants") and the County (collectively, "Defendants") for summary judgment to dismiss Plaintiff's complaint pursuant to Federal Rule of Civil Procedure 56.

For the reasons set forth below it is respectfully recommended that Defendants' motion be granted.

FACTUAL BACKGROUND

I.      Basis of Facts Recited Herein

The facts set forth below are drawn largely from the parties' statements of material facts submitted pursuant to Rule 56.1 of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York (the "Rule 56.1 Statements"). The facts are undisputed unless otherwise noted.

The Court turns to discuss the facts relied upon by the parties in connection with the present motion.

II.     Plaintiff's September 23, 2010 Complaint

On September 16, 2010, Plaintiff, a minor at that time, obtained an Order of Protection against Constance Hansen ("Mrs. Hansen"), the mother of Plaintiff's former friend, Stephanie Hansen. One week later, on September 23, 2010, Plaintiff and her mother, Diane Pertusiello ("Mrs. Pertusiello"), went to the Suffolk County Police Department's Fourth Precinct. At the precinct, in the presence of Mrs. Pertusiello, Plaintiff reported to Officer Clark that on September 22, 2010, Mrs. Hansen violated the Order of Protection.

Detective Ward was assigned to investigate Plaintiff's complaint against Mrs. Hansen. On September 23, 2010, Plaintiff gave Ward a sworn statement detailing Mrs. Hansens's purported September 22, 2010 violation. In her statement Plaintiff stated:

> On Wednesday, 09-22-2010….I went to dance class at Chorus Line Dance Studio….I saw that Stephane Hansen was un the class. I was annoyed that Stephanie Hansen was in my class because I have an Order of Protection against her mother, Constance Hansen. I told Rosanne, the dance instructor, that I didn't want Stephanie in the class, Rosanne asked Stephanie to leave and she went to the waiting room. About fifteen minutes later….I saw Constance Hansen enter the waiting room. The waiting room is separated from the dance studio by a tinted window, From the waiting room, you have to lean close to the glass to see into the dance studio. I saw Constance Hansen lean against the glass and watch me. She was making weird faces at me and rolling her eyes. I have been going to the Chorus Line Dance studio for about eight school year (SIC) and I have been going to the Wednesday night 6:30 P.M. class since it began at the start of the school year. Constance Hansen knows that I am in that dance class and she I know would be there at that time, By going to the studio, Constance Hansen violated my First District Court Order of Protection….I have read this one page statement and I swear that it is true and accurate.

Defs'. Mot., Exh. D, Docket Entry ("DE") [37-6].

That evening Ward interviewed Rosanne Cousin ("Rosanne"), the owner of the dance studio. Defs'. Mot., Exh. C, DE [37-5]. Rosanne provided Ward with a sworn written statement in which she stated that on September 22, 2010 she

> was working as a receptionist at the studio….I am aware that there are problems between Stephanie and [Plaintiff] so I told the instructor to keep them at opposite ends of the dance studio. As the class started, I observed that [Plaintiff] was antagonizing Stephanie. She was smirking at her and giving her looks and trying to intimidate her….Stephanie called her mother….to ask her mother to pick her up early….After about 10 minutes, Stephanie said that her mother was here, She said goodbye and went outside. Stephanie's mother never entered the studio and never has any contact with [Plaintiff].

Defs'. Mot., Exh.t E, DE [37-7].

On September 24, 2010, Mrs. Hansen, her husband and Stephanie went to the Fourth Precinct and gave written statements. In her statement. Mrs. Hansen stated that she did not go to the dance studio on September 22, 2010, and that her husband had picked Stephanie up that evening.  Defs'. Mot., Exh. F, DE [37-8]. In his statement. Mr. Hansen states that he had picked up Stephanie at the dance studio on September 22, 2010; that he did not go inside; that Stephanie

came outside and got into his car; that his wife did not go the dance studio; and that Mrs. Hansen was shopping at the Costco in Commack at the time. Defs'. Mot., Exh. G, DE [37-9]. In her statement, Stephanie stated that on September 22, 2010, her father pulled up his car outside the dance studio, and she went outside and got in the car. Defs'. Mot., Exh. H, DE [37-10]. Stephanie further stated that her father was the only person to pick her up from the dance studio that evening. Id.

III.    Plaintiff's Arrest

On September 28, 2010, four days after receiving the Hansens' statements referred to above, Ward conferred with Assistant County Attorney John Halownia ("Holownia"), Bureau Chief of the Family Court Bureau, the unit that prosecutes juvenile delinquency proceedings in Family Court, County of Suffolk. Defs'. Mot., Exh. C, DE [37-5]. Halownia advised Ward that "there is enough for a petition for making a false statement" against Plaintiff. Id.

At approximately 2:30 PM on September 28, 2010, Ward placed Plaintiff under arrest in the presence of her parents in front of her home in Smithtown, New York. Officer Christine Miller accompanied Ward, both of whom were in plainclothes. There were also two other uniformed Suffolk County police officers present at Plaintiff's arrest.

Plaintiff claims that the uniformed officers became physical toward her. Defs.' Mot., Exh. I, Deposition Transcript of Danielle Pertusiello ("Pertusiello Tr.") 132:10-134:14, DE [37-11]. She alleges that the two uniformed officers held her arms and led her to a police vehicle. Id. Plaintiff also claims that they threw her on the ground and then threw her into the police vehicle. Id. Plaintiff asserts that the uniformed officers told her to sit on her handcuffed wrists in the police vehicle. Id. 150:14-151:18. Plaintiff alleges that she complied, and that as a result her wrists were cut. Id.

Plaintiff was taken to the Fourth Precinct. Plaintiff claims that while at the precinct, one of the uniformed officers tightened both of her handcuffs. Pertusiello Tr. 137:18-138:18. Plaintiff further claims that while at the precinct one of the uniformed officers "hung" her from a wall by her handcuffs. Id. 140:25-144:17. About an hour after her arrest, Plaintiff was released to her parents.

III.    Post-Arrest

On October 1, 2010, Ward again went to the dance studio with Officer Miller. Defs'. Mot., Exh. C. While at the dance studio, Ward observed that the window through which Plaintiff claimed to have seen Mrs. Hansen was actually a one-way mirror. Id. The mirrored side faces into the studio, and the glass side faces into the adjoining waiting room. Id. Thus, a person inside the studio is unable to observe those in the waiting room.  A person in the waiting room would, however, be able to see those inside the studio. Ward took photographs of the one-way mirror. Those photographs confirmed that it was not possible for Plaintiff to have seen someone in the waiting room looking through the mirror. Defs'. Mot., Exh. K, DE [37-13].

A juvenile delinquency proceeding in Family Court, County of Suffolk, was brought against Plaintiff based on her alleged violations of N.Y. Penal Law § 210.45(3) (falsely reporting an incident in the third degree), and N.Y. Penal Law § 210.45 (making a punishable false written statement). These charges were based upon Plaintiff making a false report to police that Mrs. Hansen had violated the Order of Protection. The petition commencing the proceeding was signed by Assistant County Attorney Edward Parker ("Parker") on October 8, 2010, pursuant to New York Family Court Act Article 3.

Since September 23, 2010, the date of the arrest, Plaintiff claims to have suffered pain in her wrists. Pl. Exh. A, Pertusiello Tr. 17:7-24:3, DE [37-17]. She has also seen two psychiatrists

since being arrested and has been prescribed medication for her psychiatric condition.  Id. 25:4-34:21.

IV.    The Motion for Summary Judgment

Defendants move for summary judgment as to all of Plaintiff's claims. As an initial matter, Defendants argue that Plaintiff fails to identify who it is that allegedly used excessive force, issued abusive process or commenced a malicious prosecution against her. Defendants contend that Plaintiff lacks the evidence necessary to establish her causes of action because she cannot establish her Section 1983 claims for excessive force, malicious prosecution or abuse of process because the persons she claims committed these violations are non-parties, and she has no evidence that a County custom or policy existed that caused her civil rights to be violated. Defendants further argue that even if the Complaint can be construed as raising a Section 1983 claim of excessive force against Ward, Plaintiff's claim must be dismissed because Ward only handcuffed Plaintiff and she makes no claim that she was injured as a result of the handcuffing. Defendants assert that because there was probable cause to believe that Plaintiff had falsely reported an incident, she cannot show that she was falsely arrested or maliciously prosecuted, or that process was abused against her.  Defendant also argue, alternatively, that Ward is protected from Section 1983 liability by the doctrine of qualified immunity. Defendants also contend that Plaintiff fails to establish her Section 1983 abuse of process claim because she has no evidence as to Parker's motive in commencing the juvenile delinquency proceeding. Finally, Defendants argue that Plaintiff's Section 1985 conspiracy claim fails due to an absence of evidence that Defendant acted out of class-based animus toward her, and the intra-corporate conspiracy doctrine.

Plaintiff contends that that the Defendants caused her constitutional rights to be violated by not arresting Mrs. Hansen pursuant to N.Y. Criminal Procedure Law § 140.10 (4), in execution of its purported policy of not complying with the statute where the alleged violator is a member of a police or fire department, or their relative. Plaintiff also argues that the Defendants caused her constitutional rights to be violated because Ward discussed the case against Plaintiff with his police supervisors, someone from the District Attorney's office, and the Assistant County Attorney, who all agreed that Ward should proceed.

Having summarized the facts and the parties' positions the Court turns to the merits of the motion.

DISCUSSION

I.    Legal Principles: Standards on Summary Judgment

Summary judgment is appropriately granted only where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "An issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party. SCR Joint Venture L.P. v. Warshawsky, 559 F.3d 133, 137 (2d Cir. 2009). A fact is "material" if it might affect the outcome of the litigation under the relevant law. Id. The party moving for summary judgment is first responsible for demonstrating the absence of any genuine issue of material fact. Celotex, 477 U.S. at 322. Summary judgment is appropriate when the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Abramson v. Pataki, 278 F.3d 93, 101 (2d Cir. 2002) (quoting Celotex, 477 U.S. at 322).

In deciding a motion for summary judgment, the Court must "resolve all ambiguities and draw all reasonable inferences against the moving party". Tolbert v. Smith, 2015 WL 3875237 *4 (2d Cir. 2015); see Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). However, in opposing a motion for summary judgment, the non-moving party may not rely on unsupported assertions, conjecture or surmise, Goenaga v. March of Dimes Birth Defects Found., 51 F.3d 14, 18 (2d Cir. 1995), and must do more than show that there is "some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586.  Instead, the non-moving party must "set forth significant, probative evidence on which a reasonable fact-finder could decide" in her favor. Anderson v. Liberty Lobby Inc., 477 U.S. 242, 256–57 (1986).

II.    Section 1983 Claims

As noted, Plaintiff asserts claims for false arrest, abuse of process, malicious prosecution, failure to intervene, and excessive force pursuant to Section 1983.

A.    False Arrest, Malicious Prosecution, and Abuse of Process Claims

"A § 1983 claim for false arrest, resting on the Fourth Amendment right of an individual to be free from unreasonable seizures, including arrest without probable cause ... is substantially the same as a claim for false arrest under New York law." Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996) (citations omitted); Folk v. City of New York, 243 F. Supp. 3d 363, 371 (E.D.N.Y. 2017). Under New York law, a plaintiff alleging false arrest must show: (1) "the defendant intended to confine" the plaintiff; (2) "the plaintiff was conscious of the confinement"; (3) "the plaintiff did not consent to the confinement"; and (4) "the confinement was not otherwise privileged." Broughton v. State, 37 N.Y.2d 451, 373 N.Y.S.2d 87, 335 N.E.2d 310, 314 (1975); Folk, 243 F. Supp. 3d at 371. An arrest is privileged if it was "based on probable cause." Savino v. City of New York, 331 F.3d 63, 76 (2d Cir. 2003) (quoting Broughton, 373

N.Y.S.2d 87, 335 N.E.2d at 315). Accordingly, "[t]he existence of probable cause to arrest constitutes justification and is a complete defense to an action for false arrest, whether that action is brought under state law or under § 1983." Weyant, 101 F.3d at 852 (citations and quotation marks omitted); Jenkins v. City of New York, 478 F.3d 76, 84 (2d Cir. 2007).

"In general, probable cause to arrest exists when the officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." Weyant, 101 F.3d at 852 (citations omitted); United States v. Fisher, 702 F.2d 372, 375 (2d Cir. 1983) (citations omitted). "Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest." Devenpeck v. Alford, 543 U.S. 146, 152, 125 S. Ct. 588, 160 L. Ed. 2d 537 (2004) (citing Maryland v. Pringle, 540 U.S. 366, 371, 124 S. Ct. 795, 157 L.Ed.2d 769 (2003)). The arresting officer "need only possess enough information to convince a reasonable person that the arrestee committed an offense, and if he does, then he is immune from a subsequent claim of false arrest." Brown v. City of New York, 201 F. Supp. 3d 328, 331 (E.D.N.Y. 2016) (citations omitted).

"In a lawsuit claiming false arrest, the burden of establishing the absence of probable cause rests on the plaintiff." Lin v. City of New York, 2016 WL 7439362, at *11 (S.D.N.Y. Dec. 21, 2016) (internal citations and alterations omitted). On summary judgment, the existence of probable cause may be determined as a matter of law "if there is no dispute as to the pertinent events and the knowledge of the officers." Weyant, 101 F.3d at 852. Where, however, the parties dispute material facts bearing on such events and knowledge, summary judgment is not appropriate. Id.

Where officers have arrested a plaintiff without a warrant and without probable cause, the doctrine of qualified immunity, nonetheless shields government officials performing discretionary functions "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known," Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982). This raises the question of whether it was objectively reasonable for the officers to believe they did have probable cause. See Jenkins, 478 F.3d at 87. "An officer's determination is objectively reasonable if there was 'arguable' probable cause at the time of arrest—that is, if 'officers of reasonable competence could disagree on whether the probable cause test was met.'" Id. (quoting Lennon v. Miller, 66 F.3d 416, 423-24 (2d Cir. 1995). "Arguable probable cause exists when a reasonable police officer in the same circumstances and possessing the same knowledge as the officer in question could have reasonably believed that probable cause existed in the light of well established law." Cerrone v. Brown, 246 F.3d 194, 202-03 (2d Cir. 2001) (quotation marks and citation omitted). Similar immunities also shield police officers from claims asserted under New York state law. See, e.g., Jones v. Parmley, 465 F.3d 46, 63 (2d Cir. 2006) ("New York Law ... grant[s] government officials qualified immunity on state-law claims except where the officials' actions are undertaken in bad faith or without a reasonable basis." (citations omitted)).

There is no question that Ward had probable cause to arrest Plaintiff based upon information he gathered from the sworn statements from Mrs. Hansen, Mr. Hansen, Stephanie, and Rosanne Cousin. It is well-established that witness accounts provide probable cause to arrest unless the circumstances raise doubts as to the witness's veracity. See, e.g., Curley v. Village of Suffern, 268 F. 3d 65, 69–70 (2d Cir. 2001). Here, the undisputed facts show that Ward arrested

Plaintiff after receiving information from four individuals that Mrs. Hansen had not been at the studio on the evening of September 22, 2010. Further, the existence of probable cause was reinforced after the arrest when Ward documented that window through which Plaintiff claimed she saw Mrs. Hansen was actually a one-way mirror. These statements provided ample evidence that there was probable cause to believe that Plaintiff had falsely reported to police that Mrs. Hansen violated the Order of Protection.

As Ward had probable cause to arrest Plaintiff, her false arrest claim necessarily fails as a matter of law. For this same reason, her malicious prosecution and abuse of process claims also fail as a matter of law in this case. See Sullivan v. City of New York, 690 F. App'x 63, 67 (2d Cir. 2017) ("The summary judgment submissions revealed that the officers had probable cause to arrest [plaintiff], which negated [plaintiff's] claims of false arrest, malicious prosecution, false imprisonment, and abuse of process."). Accordingly, this Court recommends that summary judgment be granted as to these claims.

B.    Excessive Force

Excessive force claims brought under Section 1983 are "judged under the Fourth Amendment's 'objective reasonableness' standard." Terranova v. New York, 676 F.3d 305, 308 (2d Cir. 2012) (quoting Brosseau v. Haugen, 543 U.S. 194, 197, 125 S. Ct. 596, 160 L. Ed. 2d 583 (2004)). The same is true for claims of assault and battery brought under New York law. See, e.g., Kramer v. City of New York, 04-CV-106, 2004 WL 2429811, at *11 (S.D.N.Y. Nov. 1, 2004) ("In the context of state officers performing their lawful duties, New York State law regarding assault and battery parallels the federal laws regarding excessive force." (citation omitted)). Under this standard, the determinative question is whether the officers' actions are " 'objectively reasonable' in light of the facts and circumstances confronting them, without regard

to their underlying intent or motivation." <u>Spinelli v. City of New York</u>, 579 F.3d 160, 167 (2d Cir. 2009) (citation omitted). "Under the law, police are not permitted to use any degree of force in all instances—in some circumstances, no use of force is reasonable because none is required." <u>Weather v. City of Mount Vernon</u>, 08-CV-192, 2011 WL 1046165, at *9 (S.D.N.Y. Mar. 22, 2011 (citation omitted), <u>aff'd</u>, 474 F. App'x 821 (2d Cir. 2012).

It is "well established that law enforcement officers violate the Fourth Amendment if the amount of force they use is 'objectively unreasonable' in light of the facts and circumstances confronting them." <u>Rogoz v. City of Hartford</u>, 796 F.3d 236, 246 (2d Cir. 2015) (citation omitted). Further,

> [t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation.

<u>Id.</u> (quoting <u>Graham v. Connor</u>, 490 U.S. 386, 396–97, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989)); <u>accord Jones v. Parmley</u>, 465 F.3d 46, 61 (2d Cir. 2006).

"The 'reasonableness' of the amount of force used thus 'must be judged from the perspective of a reasonable officer on the scene ... at the moment' the force is used." <u>Rogoz</u>, 796 F.3d at 246–47 (quoting <u>Graham</u>, 490 U.S. at 396, 109 S. Ct. 1865). "In sum, the 'standard' to be applied in determining whether 'the amount of force' used exceeded the amount that was 'necessary' in the particular circumstances is 'reasonableness at the moment.'" <u>Id.</u> at 247 (quoting <u>Graham</u>, 490 U.S. at 396, 397, 109 S. Ct. 1865). Furthermore, "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers ... violates the Fourth Amendment." <u>Graham</u>, 490 U.S. at 396, 109 S. Ct. 1865.

"Courts apply a separate standard to claims for excessive force in the use of handcuffs." <u>Sachs v. Cantwell</u>, 2012 WL 3822220, at *14 (S.D.N.Y. Sept. 4, 2012).

Specifically, the court should "consider evidence that: [i] the handcuffs were unreasonably tight; [ii] the defendants ignored the arrestee's pleas that the handcuffs were too tight; and [iii] the degree of injury to the wrists." Esmont v. City of New York, 371 F. Supp. 2d 202, 215 (E.D.N.Y.2005) (citations omitted). Here, too, the inquiry must reflect the totality of the circumstances, including any facts that bear on whether use of an unusual degree of force may have been justified.

The injury requirement is "particularly important," Sachs, 2012 WL 3822220, at *14, because in order " 'to be effective, handcuffs must be tight enough to prevent the arrestee's hands from slipping out,' " Abdul–Rahman v. City of New York, 2012 WL 1077762, at *7 (E.D.N.Y. Mar. 30, 2012) (quoting Esmont, 371 F.Supp.2d at 214). It is clear that "handcuffing can give rise to a § 1983 excessive force claim where plaintiff suffers an injury as a result." Gonzalez v. City of New York, 2000 WL 516682, at *4 (E.D.N.Y. Mar. 7, 2000). However, "[t]here is a consensus among courts in this circuit that tight handcuffing does not constitute excessive force unless it causes some injury beyond temporary discomfort." Lynch ex rel. Lynch v. City of Mount Vernon, 567 F. Supp. 2d 459, 468 (S.D.N.Y. 2008). "These injuries need not be severe or permanent, but must be more than 'de minimis.' " Usavage v. Port Auth. of N.Y. & N.J., 932 F. Supp. 2d 575, 594 (S.D.N.Y.2013) (internal quotation marks omitted); see also Washpon v. Parr, 561 F. Supp. 2d 394, 407 (S.D.N.Y.2008); see generally Corselli v. Coughlin, 842 F.2d 23, 26–27 (2d Cir.1988) (even if injuries suffered were not permanent or severe, a plaintiff may still recover if force used was unreasonable and excessive).

" '[U]nsubstantiated claims of nerve damage, in the absence of corroborating medical evidence, are insufficient' to sustain a claim of excessive force from handcuffing." Matthews v. City of New York, 889 F. Supp. 2d 418, 442–43 (E.D.N.Y. Sept. 5, 2012) (quoting Esmont, 371

F. Supp. 2d at 215). That said, a plaintiff's testimony about the injuries and subsequent treatment alone may be sufficient to support an excessive force claim on a motion for summary judgment. See Pelayo v. Port Auth., 893 F. Supp. 2d 632, 642–43 (S.D.N.Y.2012) (citing Mickle, 297 F.3d at 121–22). A court may also consider whether the plaintiff sought emergency medical treatment right after a handcuffing incident. See Washpon, 561 F. Supp. 2d at 407 (denying summary judgment where, inter alia, plaintiff "did seek emergency medical treatment right after the incident").

Courts may decide excessive force claims, including claims arising from allegations of excessively tight handcuffs, on motions for summary judgment. See Matthews, 889 F. Supp.2 d at 442–43 ("The determination of whether tight handcuffing that causes pain and numbness satisfies the injury requirement may be presented in a motion for summary judgment." (collecting cases)). Qualified immunity may also be a defense to an excessive force claim. In this context, "the question for the purposes of qualified immunity is whether a reasonable officer could have believed that the use of force alleged was objectively reasonable in light of the circumstances." Usavage, 932 F. Supp. 2d at 594 (internal quotation marks omitted).

It is undisputed that the only physical contact between Plaintiff and Ward was when Ward handcuffed her. Plaintiff claims that her wrists were cut as a result of being forced by the non-party uniformed officers to sit on her handcuffs after they tightened them. Plaintiff claims that the she told Ward that the handcuffs were too tight. Pertusiello Tr. 130:25-131:9. Plaintiff further claims that Ward and the other uniformed officers ignored her pleas that the handcuffs were too tight.

As an initial matter, the Court agrees with Plaintiff that nothing about her offense of arrest, or her conduct at the time of that arrest, suggested that she posed an immediate threat to

the safety of the officers or was "actively resisting arrest or attempting to evade arrest by flight." Graham, 490 U.S. at 386. Even with that being said, the evidence concerning Plaintiff's injuries here is insufficient to raise a genuine issue of material fact as to her claim of constitutional violation for excessive force. Plaintiff claims to have had marks on her wrist from the handcuffs and bleeding immediately following the arrest as well as ongoing pain. Plaintiff has provided one medical record for contemporaneous care.  That record indicates only that Plaintiff was treated on September 28, 2010 for wrist pain cyst, but the medical record does not include any prescriptions, instructions to the patient, specialist referral or recommendation for follow-up care. See Pl. Mot., Exh. H, DE [37-24]. Plaintiff next received wrist care in March 2011, when an MRI of her wrist was performed and showed a small ganglion cyst. See Pl. Mot., Exh. I, DE [37-25]. Again, the record is silent as to the cause of the cyst.

Plaintiff's proffered injuries, while unfortunate, are insufficient under the law of this Circuit to support an excessive force claim. This is clear from a review of the many district court decisions in this area. Compare Sachs, 2012 WL 3822220, at *14–15

(granting summary judgment on tight handcuffing claim where plaintiff experienced 24 hours of swelling and went to hospital but received no treatment for his wrists); Richardson v. N.Y.C. Health & Hosps. Corp.,  2009 WL 804096, at *10–14 (S.D.N.Y. Mar. 25, 2009) (granting summary judgment where plaintiff experienced pain, bruises, swelling, and red marks, and was given an over-the-counter pain reliever at the hospital); Esmont, 371 F. Supp. 2d at 213–15 (granting summary judgment where plaintiff sought treatment for bruising and swelling, and wore a "half-cast" provided by doctor for one week, where plaintiff sought no further medical treatment and provided no medical evidence supporting her claim), with Usavage, 932 F. Supp. 2d at 596–97 (denying summary judgment where plaintiff

testified as to continuing numbness and pain and medical testing revealed inflammation consistent with compression injury and nerve damage); Pelayo, 893 F. Supp. 2d at 642–43 (denying summary judgment where MRI revealed torn cartilage and plaintiff presented evidence of physical therapy and lost time from work); Washpon, 561 F. Supp. 2d at 401, 407–08 (denying summary judgment where plaintiff received tetanus shot at hospital following removal of handcuffs and testified to permanent scarring; noting that the scarring distinguished the case from cases involving temporary pain or swelling, "albeit just barely"). See generally Usavage, 932 F. Supp. 2d at 592 ("The most common injuries found to satisfy the injury requirement in handcuff cases are scarring and nerve damage." (collecting cases)); Lemmo v. McKoy, 2011 WL 843974, at *5 (E.D.N.Y. Mar. 8, 2011) ("Injuries held to be de minimis for purposes of defeating excessive force claims include short-term pain, swelling, and bruising, brief numbness from tight handcuffing, claims of minor discomfort from tight handcuffing, and two superficial scratches with a cut inside the mouth." (internal citations omitted) (collecting cases)).

Plaintiff has neither cited to any case law in which the use of handcuffs by themselves are deemed excessive force, nor presented any medical evidence that her injuries were more than de minimis. Accordingly, her excessive force claim, which arises only out of her handcuffing, must be dismissed. Therefore, this Court recommends that summary judgment be granted as to Plaintiff's excessive force claim.

C.    Failure To Intervene

The Second Circuit has recognized "all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence." Anderson v. Branen, 17 F.3d 552, 557 (2d Cir.

1994)(citations omitted). Liability for failure to intercede will attach where the officer in

question observes or has reason to know of the underlying wrongful conduct and had a "realistic

opportunity to intervene to prevent the harm from occurring" but failed to do so. Id.

Plaintiff asserts that Defendants failed to intervene and prevent the alleged constitutional

violations. The Court has already concluded that the predicate claims for false arrest, malicious

prosecution, abuse of process and excessive force cannot survive. Therefore, the claim

for failure to intervene based on the false arrest and excessive force claims likewise fails.

Accordingly, the Court respectfully recommends that summary judgment be granted as to

Plaintiff's failure to intervene claim.

D.    Municipal Liability

Plaintiff claims that the County is liable for the alleged violations of her rights under

Sections 1983 and 1985.

In order to state a claim under Section 1983, a plaintiff must allege that she has been (1)

deprived of a right, privilege or immunity secured by the Constitution or laws of the United

States, and that (2) this deprivation was done under color of law. 42

U.S.C. § 1983; accord Pitchell v. Callan, 13 F.3d 545, 547 (2d Cir. 1994) (citing Parratt v.

Taylor, 451 U.S. 527, 535 (1981)). It is well established that the "under-color-of-state-law

element of § 1983 excludes from its reach 'merely private conduct, no matter how discriminatory

or wrongful.'" Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 50 (1999) (quoting Blum v.

Yaretsky, 457 U.S. 991, 1002 (1982)). The Supreme Court has held that an individual acts under

the color of law when he or she exercises power "made possible only because [he or she] is

clothed with the authority of state law." United States v. Classic, 313 U.S. 299, 326 (1941); see

also United States v. Walsh, 194 F.3d 37, 50 (2d Cir. 1999) ("The Supreme Court has broadly

interpreted the color of law requirement, concluding that misuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law, is action taken under color of state law." (alteration adopted) (citation and internal quotation marks omitted)).

Here, Defendant seek to dismiss Plaintiff's Section 1983 claim for two independent reasons: (1) "Plaintiff has failed to allege any underlying constitutional violation"; and (2) Plaintiff has failed to establish that the alleged constitutional deprivation "is the direct result of an official municipal policy or custom."

A municipality can only be held liable under 42 U.S.C. Section 1983 in the manner set forth in Monell v. Dep't of Soc. Servs. of N.Y.C., 436 U.S. 658 (1978), and its progeny, and may not be held liable on a theory of respondeat superior. Nagle v. Marron, 663 F.3d 100, 116 (2d Cir. 2011). In order to prevail on a § 1983 claim against a municipality, a plaintiff must show that the municipality itself caused the alleged constitutional deprivation. City of Canton v. Harris, 489 U.S. 378, 385 (1989). Plaintiff must therefore establish that an identified municipal policy or practice was the "moving force [behind] the constitutional violation." Monell, 436 U.S. at 694. Accordingly, in order to state a Monell claim, "[t]he plaintiff must first prove the existence of a municipal policy or custom in order to show that the municipality took some action that caused his injuries.... Second, the plaintiff must establish a casual connection—an 'affirmative link'—between the policy and deprivation of his constitutional rights." Vippolis v. Vill. of Haverstraw, 768 F.2d 40, 44 (2d Cir. 1985) (quoting Oklahoma City v. Tuttle, 471 U.S. 808, 824 n. 8(1985)).

A municipal policy or custom for purposes of Monell liability can be established by alleging:

> 1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that it constitutes a custom or usage sufficient to impute constructive knowledge of the practice to policymaking officials; or (4) a failure by policymakers to train or supervise subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees.

Bennerson v. City of New York, No. 03-CV-10182, 2004 WL 9021667241, at *4 (S.D.N.Y. Apr. 28, 2004) (internal citations omitted).

Because the Court has already concluded that Plaintiff's constitutional rights were not violated, municipal Section 1983 liability cannot exist. See Matican v. City of N.Y., 524 F.3d 151, 154 (2d Cir. 2008) (explaining that if there is no constitutional violation by a governmental actor, a city cannot be liable "regardless of whether the officers acted pursuant to a municipal policy or custom"). Therefore, this Court respectfully recommends that summary judgment be granted as to Plaintiff's Monell claim.

III.    Section 1985(3) Claim

Count Seven of the Complaint alleges a conspiracy claim pursuant to 42 U.S.C. S 1985(3). To state a civil rights conspiracy under Section 1985(3), a plaintiff must allege: 1) a conspiracy; 2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and 3) an act in furtherance of the conspiracy; 4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States. Gray v. Town of Darien, 927 F.2d 69, 73 (2d Cir.) (citing United Brotherhood of Carpenters & Joiners of Am., Local 610 v. Scott, 463 U.S. 825 (1983)). The conspiracy "must also be motivated by some racial or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' action." Britt v. Garcia, 457 F.3d 264, 270 n.4 (2d Cir.

2006) (quoting <u>Thomas v. Roach</u>, 165 F.3d 137, 146 (2d Cir. 1999) (internal quotation marks and citation omitted)).

Plaintiff's Section 1985(3) claim is easily resolved, inasmuch as it abandoned. In her opposition, Plaintiff does not respond to Defendants' arguments; she does not put forth any evidence supporting the validity of her Section 1985(3) claim; and, indeed, she does not mention the claim. <u>See</u> <u>generally</u> Pl. Opp. Defendants argue that Plaintiff has therefore abandoned the claim.

As the Second Circuit has remarked, "[A] partial opposition [to a motion for summary judgment] may imply an abandonment of some claims or defenses. Generally ... a partial response reflects a decision by a party's attorney to pursue some claims ... and to abandon others." <u>Jackson v. Fed. Exp.</u>, 766 F.3d 189, 196 (2d Cir. 2014). In such a case, where "abandonment by a counseled party is not explicit but such an inference may be fairly drawn from the papers and circumstances viewed as a whole, district courts may conclude that abandonment was intended." <u>Id.</u>

Here, it is clear from the "papers and circumstances viewed as a whole" that Plaintiff has abandoned her Section 1985(3) claim. <u>See</u> <u>Jackson</u>,766 F.3d at 196. Plaintiff makes no mention of her Section 1985(3) claim in her opposition to Defendants' motion for summary judgment. Moreover, Under these circumstances, the Court concludes that Plaintiff intended to abandon these claims.

Accordingly, this Court recommends that Defendants' motion for summary judgment be granted with regard to Plaintiff's Section 1985(3) claim.

## CONCLUSION

For the foregoing reasons, this Court respectfully recommends that Defendants' motion for summary judgment, appearing as Docket Entry No. 37 herein, be granted in its entirety.


## OBJECTIONS

A copy of this Report and Recommendation is being provided to all counsel via ECF. Any written objections to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of filing of this report. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 72(b). Any requests for an extension of time for filing objections must be directed to the District Judge assigned to this action prior to the expiration of the fourteen (14) day period for filing objections. Failure to file objections within fourteen (14) days will preclude further review of this report and recommendation either by the District Court or Court of Appeals. Thomas v. Arn, 474 U.S. 140, 145 (1985) ("[A] party shall file objections with the district court or else waive right to appeal."); Caidor v. Onondaga Cnty., 517 F.3d 601, 604 (2d Cir. 2008) ("[F]ailure to object timely to a magistrate's report operates as a waiver of any further judicial review of the magistrate's decision").


Dated:  Central Islip, New York
        August 19, 2019

                                                 /s/ Anne Y. Shields
                                                Anne Y. Shields
                                                United States Magistrate Judge